**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | |
|---|---|
| KEITH J. MOON, : | |
| : | |
| Claimant, : | |
| : | |
| v. : | CASE NO. 3:09-CV-81-CDL-GMF |
| : | Social Security Appeal |
| MICHAEL J. ASTRUE, : | |
| Commissioner of Social Security, : | |
| : | |
| Respondent. : | |

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ) determination, denied Claimant's application for social security disability benefits, finding that he was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court's role in reviewing claims brought under the Social Security Act

is a narrow one. The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46, 48 (5th Cir. 1973) (per curiam). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981). A claimant seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1, *et seq.*

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

Under the regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled. 20 C.F.R. § 404.1520, app. 1, pt. 404. First, the Commissioner determines whether the claimant is working. If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments. Next, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations (the "Listing"). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

## ISSUES

I.  **Whether the ALJ erred in rejecting the opinion of the claimant's treating physician, Dr. James Southerland, M.D.**

II. **Whether the ALJ substituted his opinion for medical experts where he gave great weight to Dr. Schacher's opinion but disregarded portions of that opinion in**

**finding the claimant not disabled at Step Five.**

**III.    Whether the ALJ erred in failing to pose a complete hypothetical, based on all the medical evidence he found credible, to the VE.**

## Administrative Proceedings

Claimant protectively filed for Supplemental Security Income ("SSI") on April 26, 2001 alleging disability beginning on that date. (T-20). His claim was denied initially and on reconsideration, and Claimant requested a hearing. (T-33, 34, 56). A hearing was held before an Administrative Law Judge ("ALJ") on April 30, 2003 in Athens, Georgia. (T-427-453). Following the ALJ's unfavorable ruling, Claimant requested an appeal. (T-91-92). The Appeals Council remanded the case on October 28, 2004, directing the ALJ to review an additional medical record from Claimant's treating physician.[2] (T-96-98). On April 27, 2006, a second hearing was held in Athens before the same ALJ who initially issued the unfavorable ruling. (T-454-90). On December 7, 2006, the ALJ again ruled against Claimant, and Claimant again sought Appeals Council review. (T-16, 20-30). On April 29, 2009, the Appeals Council denied Claimant's request for review of the ALJ's decision, making the decision the Commissioner's final determination in the matter. (T-7-9). Claimant timely filed the instant action challenging the Commissioner's final decision on June 22, 2009. (R-1).

## Statement of Facts and Evidence

---

[2] In the meantime, Claimant protectively filed a new application for SSI benefits, dated September 9, 2003. (T-20).

After careful consideration of the entire record—including hearing testimony by Claimant, an impartial medical expert, and an impartial vocational expert—the ALJ in this case determined that Claimant had not engaged in substantial gainful activity since April 26, 2001, the alleged onset date of his disability. (T-22). The ALJ found that Claimant had severe impairments of diabetes mellitus and diabetic peripheral neuropathy, but that these impairments were not sufficiently severe to meet or medically equal one of the impairments listed in the regulations. (T-23, 26). The ALJ next determined that Claimant had the residual functional capacity ("RFC") to lift up to twenty pounds occasionally and ten pounds frequently; to stand for up to four of eight hours; and to sit for a full workday. (T-26). Additionally, the ALJ noted that Claimant had best corrected vision of 20/40 in each eye and that he would be limited to occasional climbing and rare stooping, crouching, kneeling, and crawling. *Id.* The ALJ also noted limitations on Claimant's ability to push and pull. *Id.* Further, the ALJ found that Claimant should avoid exposure to temperature extremes, humidity, and vibration. *Id.*

The ALJ next determined that Claimant, who was a younger individual with limited education and the ability to communicate in English, had no vocationally relevant past relevant work. (T-29). After examining the Medical-Vocational Guidelines, the ALJ found that transferability of job skills was not relevant to the disability determination because the Guidelines supported a finding that Claimant was "not disabled" regardless of the presence of transferable job skills. *Id.* The ALJ also relied upon evidence provided by a vocational expert ("VE") who stated that given Claimant's age, education, work experience, and RFC,

jobs existed in significant numbers in the national economy that Claimant could perform. *Id.* Thus, the ALJ concluded, Claimant was not disabled within the meaning of the Social Security Act. (T-30).

## DISCUSSION

**I.   Whether the ALJ erred in rejecting the opinion of the claimant's treating physician, Dr. James Southerland, M.D.**

Claimant first contends that the ALJ should not have "summarily" rejected the statements of Claimant's treating physician, Dr. Southerland. (R-9 at 8). The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2); *see* SSR 96-5p. An ALJ is not required to give significance to opinions of any medical provider where the opinion relates to issues reserved solely for determination by the Commissioner; this includes any physician's opinion which states that he finds the claimant disabled or that the claimant's impairments meet or equal any relevant listing. 20 C.F.R. § 416.927(e)(1), (2) & (3); SSR 96-5p. Determinations of disability or RFC "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 416.927(e); *see* SSR 96-5p.

A medical opinion provided by a claimant's treating physician may be entitled to

controlling weight if the ALJ finds "that the treating source's medical opinion is 'well-supported' by 'medically acceptable' clinical and laboratory diagnostic techniques. The adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion." SSR 96-2p.  Additionally, the ALJ must find that the treating source's opinion is "not inconsistent" with other "substantial evidence" of record. *Id*.  Even if a medical opinion is not entitled to controlling weight, however, the opinion of a treating physician is entitled to substantial or considerable weight unless good cause exists for not heeding it. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985) (per curiam). "Good cause" exists when a treating physician's report is not accompanied by objective medical evidence or when it is conclusory. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  The ALJ can also reject the opinion of any physician when the evidence supports a contrary conclusion or when it is contrary to other statements or reports of the physician. *See Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991); *see also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam).  The weight afforded a medical source's opinion on the issues of the nature and severity of a claimant's impairments is analyzed with respect to factors including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence the medical source submitted to support the opinion, the consistency of the opinion with the record as a whole, and the specialty of the medical source.  20 C.F.R. § 416.927(d).

In this case, the ALJ found that the limitations prescribed by Dr. Southerland were "not consistent with other medical records from Dr. Southerland, nor with the medical

evidence of record as a whole." (T-28). The ALJ therefore concluded that although he would give Dr. Southerland's opinion "due deference," he would accord it "very little weight in light of the inconsistencies with other medical evidence of record and with previous notes from the doctor himself." *Id.* The ALJ also concluded that Dr. Southerland's justifications for work restrictions "appear to be merely a recitation of the claimant's subjective complaints of that visit and are not based upon any long-term complaints or any objective evidence." *Id.* The ALJ instead chose to adopt the RFC assessment of Dr. Schacher, the most recent examining physician. (T-29).

Claimant does not argue that Dr. Southerland's opinion should be given controlling weight. Instead, Claimant contends that the ALJ failed to meet its burden of showing "good cause" for rejecting Dr. Southerland's opinion. (R-9 at 9). The court agrees. The opinions of Dr. Southerland and Dr. Schacher are largely inconsistent. (*Compare* T-328-330 *with* T-413-415).[3] However, those two medical opinions were not the only medical opinions of record. Indeed, the record contained at least five different medical opinions to guide the ALJ's decision in this case. In addition to the opinions provided by Dr. Schacher and Dr. Southerland, the record contains opinions from Dr. Tsai, a consulting neurologist who examined Claimant in 2002, and Dr. Sethi, a consulting neurologist who examined Claimant in 2006. Additionally, the record contains the opinion of Dr. Buda, a consulting, non-examining physician who testified at both hearings in this case.

---

[3] Although the first page of Dr. Schacher's evaluation does not appear in the record, Dr. Schacher's RFC assessment—the portion of the record critical to the court's review—is properly reproduced.

Portions of Dr. Southerland's opinion are entirely consistent with the medical evidence of record, taken as a whole. For example, Drs. Tsai, Southerland, Sethi, and Buda each concluded that Claimant's ability to handle and finger would be limited by his diabetic neuropathy. Additionally, each of these doctors concluded that Claimant's exposure to hazards in the workplace should be limited.[4] In contrast, Dr. Schacher, whose opinion formed the basis for the ALJ's determination of Claimant's RFC, found no limitations on handling, fingering, or exposure to hazards. (T-26, 29; T-421, 422).[5] Although the ALJ

---

[4] In October of 2002, Dr. Tsai diagnosed Claimant with peripheral neuropathy and noted that Claimant's handling, fingering, and feeling would be "limited" secondary to that diagnosis. (T-260). In addition, Dr. Tsai observed that Claimant's neuropathy "may progress and patient may have decreasing neurological function over time." (T-261). Dr. Tsai also suggested that Claimant should avoid hazards due to "poor [lower extremity] skin." *Id.*

At the first hearing in April of 2003, Dr. Buda testified that Claimant had been diagnosed with a diabetic neuropathy, that the condition would be painful, and that the condition " would produce limitations for the Claimant in the work environment." (T-443-44). Dr. Buda further testified that Claimant would have "some manipulative restrictions with handling, fingering, and feeling" and limited Claimant to only occasional handling, fingering, and feeling with the left hand. (T-444). Dr. Buda further restricted Claimant to "not even moderate exposure" to hazards. *Id.* Notably, the ALJ relied on Dr. Buda's findings in the first hearing to formulate Claimant's RFC, and the ALJ included limitations on handling, fingering, feeling, and hazards in his initial RFC assessment. (T-42).

In May of 2003, Dr. Southerland observed that Claimant's diabetic neuropathy "goes/comes" and would affect his handling, fingering, and feeling. (T-329). Dr. Southerland further observed that claimant "drop[ped] things a lot," had "no strength in hands," and suffered from "wrist pain." *Id.* Dr. Southerland also advised that Claimant should avoid all exposure to hazards because he had "very limited mobility" and "neuropathies." (T-330).

In November of 2005, Dr. Sethi concluded that Claimant had evidence of peripheral neuropathy that would limit Claimant to only occasional handling, fingering, and feeling. (T-402). He also determined Claimant should avoid hazards, apparently due in part to Claimant's neuropathy, chronic low back pain, and visual impairment. (T-403).

During the second hearing in April of 2006, Dr. Buda testified that he would continue to restrict Claimant's RFC to occasional handling, fingering, and feeling with the left hand and that he recommended not even moderate exposure to heights and hazards. (T-476-77).

[5] It is significant that the VE testified that the jobs Claimant could perform, given Dr. Schacher's RFC assessment, included parking lot cashier, small parts electronics assembler, and assembler-inspector of optical goods. (T-231). Each of these jobs would appear to involve the ability to handle and finger on a frequent basis. *See* Dep't of Labor, *Dictionary of Occupational Titles*, §§ 211.462-010 (Cashier II,

9

mentioned selected findings of Drs. Buda, Tsai, and Sethi, he failed to describe the weight given to their opinions or describe why he implicitly rejected their findings that Claimant had limited ability to handle, finger, or be exposed to hazards. Such failure has been held to amount to error requiring remand. *See, e.g., McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (finding error where ALJ failed to discuss weight given to report of consulting psychologist because "[t]he ALJ is required . . . to state with particularity the weight he gives to different medical opinions and the reasons why"); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam) ("In assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor."); *see also* 20 C.F.R. § 416.927(d) ("Regardless of its source, we will evaluate every medical opinion we receive.").

      The ALJ also failed to explain how Dr. Southerland's opinion was inconsistent with the doctor's previous records. Dr. Southerland apparently based his RFC assessment on Claimant's (1) severe lower back pain; (2) right hip pain and weakness; (3) urinary frequency and urgency; (4) bilateral wrist pain and weakness; and (5) diabetic neuropathy. (T-329). There is at least some record support for these findings. For example, Dr. Southerland's records indicate that Claimant suffered from diabetic neuropathy (T-252, 372); that his legs would sometimes "give[] out" (T-252); that he had problems with his feet (T-252, 254); and

---

including Cashier, Parking Lot); 726.684-018 (Electronics Assembler); & 711.381-010 (Optical-Instrument Assembler) (1991); *see also Hubbard v. Comm'r of Soc. Sec.*, No. 08-16190, 2009 WL 3262024, at *1 n.1 (Oct. 13, 2009) (noting that court may take judicial notice of information contained in the *Dictionary of Occupational Titles*). Thus, it is unclear from the record before the court whether the ALJ's failure to properly consider the evidence amounts to harmless error.

that he suffered leg and hip pain and weakness (T-322, 356, 357, 360, 397).[6]  An ALJ is required to set forth its reasons for discounting a treating physician's opinion in detail sufficient to allow meaningful judicial review. *See, e.g., Pettaway v. Astrue*, No. 06-00880-WS-B,  2008 WL 1836738, at *14  (S.D. Ala. Apr. 21, 2008) (holding that ALJ's decision was incapable of meaningful judicial review when ALJ failed to "explain the specific inconsistencies which he determined existed between the opinions of these physicians and their treatment notes").  The ALJ in this case has failed to meet this standard.

The ALJ's position that Dr. Southerland's opinion may have been due less than substantial weight is not entirely devoid of merit.  For example, Dr. Southerland's opinions regarding Claimant's ability to lift/carry, stand/walk, and sit are markedly more restrictive than those provided by the other physicians in this case.[7]  In addition, a reviewing court generally should not re-evaluate an ALJ's findings as to credibility, *Carnes*, 936 F.2d at 1219, and such findings clearly played a role in the ALJ's decision in this case, (T-26-28).  However, it remains unclear from the ALJ's decision whether the ALJ properly evaluated

---

[6] Some of these notes came from Dr. Southerland directly; others came from the Tendercare Clinic, where Dr. Southerland apparently treated Claimant on occasion.  (*See* R-9 at 8).

[7] For example, Dr. Tsai concluded that Claimant had no limitations on his ability to lift, carry, stand, walk, or sit. (T-259).  Dr. Sethi opined that Claimant could lift up to fifty pounds occasionally and twenty-five pounds frequently and that Claimant did not have any limitations on his ability to sit, stand, or walk.  (T-401-02). Dr. Schacher found that Claimant could lift up to twenty pounds occasionally and ten pounds frequently, that he could stand for at least four hours in an eight-hour workday, and that he could sit for a full workday provided he had bathroom breaks as needed.  (T-420-21).
   In contrast, Dr. Southerland determined Claimant could only lift and carry ten pounds occasionally and less than ten pounds frequently; that he could only stand or walk two hours in an eight-hour workday; and that he could sit with normal breaks for less than two hours in an eight-hour workday. (T-328).  In addition, Dr. Southerland determined that Claimant would be required to frequently change position, walk around, and lie down at unpredictable intervals during a work shift. (T-329).

the medical evidence of record as a whole when he determined that Claimant was not disabled. Accordingly, it is recommended that this case be remanded to the ALJ for further consideration as to this issue. Moreover, because it is unclear whether the hypothetical posed to the vocational expert was sufficient, it is unnecessary to address Claimant's remaining two claims of error. *See McCloud*, 166 F. App'x at 419 (noting that it was unclear whether the ALJ's previous hypothetical comprised all of the claimant's impairments due to the ALJ's failure to properly describe the weight given to certain evidence).

**WHEREFORE**, it is the recommendation to the United States District Judge that the decision of the Commissioner of Social Security be **REMANDED** to the Administrative Law Judge. Pursuant to 28 U.S.C. § 636(b)(1), the Commissioner may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

THIS the 19th day of January, 2010.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE